SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YI LIU,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security;<br>EMILIO T. GONZALEZ, Director of U.S. Citizen and Immigration Services;<br>ROBERT S. MUELLER, III, Director of Federal Bureau of Investigation;<br>GERALD HEINAUER, Director of the Nebraska Service Center of U.S. Citizen and Immigration Services;<br>ALBERTO GONZALES, Attorney General of the United States,<br>        Defendants. | No. C 07-4606 PJH<br><br>DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND DECLARATION OF F. GERARD HEINAUER<br><br>Date:      February 20, 2008<br>Time:     9:00 a.m.<br>Courtroom: 3rd, 17th Floor |

**I. INTRODUCTION**

Plaintiff Yi Liu, a citizen of China, and his wife, Xiyun Zhang, although not a named party, ask this Court to issue a writ of mandamus, compelling Defendants to reach a decision on their applications for adjustment of status to legal permanent residents (LPR). Plaintiff also asks the Court to find that Defendants have violated the Administrative Procedure Act (APA) and issue a notice of approval to him and his wife.

Plaintiff and his wife's applications remains pending because Plaintiff's name check is not yet

Defendants' Cross-Motion for Summary Judgment
C07-4606 PJH                                                  1

complete, and **currently there are no available visa numbers for second preference visa category applicants.** His wife's name check was completed on February 9, 2005, however, as a derivative spouse, her application cannot be adjudicated until the principal application has been completed, and a visa is available. The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## II.   BACKGROUND

Plaintiff Yi Liu, and his wife, Xiyun Zhang (not a named party) are citizens of the People's Republic of China. See Declaration of F. Gerard Heinauer (Heinauer Decl.) ¶ 3 (attached as Exh. A). On January 10, 2005, Plaintiff applied for adjustment of status to LPR based on a Form I-140 immigrant visa petition for alien worker filed on October 27, 2003, by Plaintiff, as a self-petitioner, as a second preference visa category applicant. Heinauer Decl. ¶ 4-6. The visa petition was approved on February 3, 2005. Id. On January 20, 2005, a request for background security name check for Plaintiff and his wife were submitted electronically to the FBI by the United States Citizenship and Immigration Services (USCIS). Heinauer Decl. ¶15. Plaintiff's name check remains pending, while his wife's has been completed on February 9, 2005. Id. Plaintiff filed the instant Complaint on September 6, 2007.

## III.   GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. LEGAL STANDARD

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A "material" fact is one which might affect the outcome of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. Id. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The parties agree that the facts are undisputed.

///

B. ADJUSTMENT OF STATUS

The Immigration and Nationality Act, 8 U.S.C. § 1255 ("INA") provides:

> The status of an alien ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). USCIS, along with the FBI, conducts several forms of security and background checks to make sure the applicant is eligible for adjustment of status and does not pose a security risk. The statute sets forth no time frame in which a determination must be made. Heinauer Decl. ¶ 13. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. Id. The FBI's name check process is quite complex. See USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. B).

C. THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S.

Defendants' Cross-Motion for Summary Judgment
C07-4606 PJH                                        3

99, 107 (1977); <u>Staacke v. U.S. Department of Labor</u>, 841 F.2d 278, 282 (9th Cir. 1988).  Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established.  <u>Staacke</u>, 841 F.2d at 282.  Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts.  <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy.  See <u>Cheney v. United States District Court for the District of Columbia</u>, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 34 (1980).  The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty."  <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

<u>Kildare v. Saenz</u>, 325 F.3d 1078, 1084 (9th Cir. 2003).  Thus, "'mandamus does not lie to review the discretionary acts of officials.'"  See <u>Nova Stylings Inc. v. Ladd</u>, 695 F.2d 1179, 1180 (9th Cir. 1983), quoting <u>Nelson v. Kleppe</u>, 457 F. Supp. 5, 8 (D. Idaho 1976).

**IV.   ANALYSIS**

A.   <u>ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED</u>

Courts in this District have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557.  Accordingly, Defendants Emilio T. Gonzalez, Robert S. Mueller, Gerard Heinauer and Alberto Gonzales should be dismissed.  See <u>Clayton v. Chertoff, et al.</u>, No. 07-cv-02781-CW, slip. op., at 13 (N.D. Cal. Oct 1, 2007); <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); <u>Dmitriev v. Chertoff</u>, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007).

B.   <u>PLAINTIFF IS NOT CURRENTLY ELIGIBLE TO ADJUST HIS STATUS</u>

"An application for adjustment of status as a preference alien shall not be approved until an

immigrant visa number has been allocated by the Department of State." 8 C.F.R. § 245.2(a)(5)(ii). Plaintiff is a second preference visa category applicant from China. Therefore, there are currently no visas available through January 2008. Heinauer Decl. ¶ 6-8. Visas are allocated by the Department of State and Defendants cannot adjust Plaintiff's status until visas are available. Heinauer Decl. ¶ 7-8. Therefore, Plaintiff is currently not eligible to adjust his status.

C. RELIEF IS NOT AVAILABLE UNDER THE APA OR THE ALL WRITS ACT

1. Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

There is no Ninth Circuit authority addressing this issue. However, some district courts have concluded that the pace that USCIS adjudicates an adjustment of status application is discretionary, and therefore district courts should not consider whether USCIS is adjudicating an adjustment of status application at a reasonable pace under § 1361. See, e.g., Grinberg v. Swacina, 478 F.Supp.2d 1350, 1352 (S. D. Fla .2007) ("Sections 242 and 245 of the Immigration and Nationality Act ... preclude judicial review of any discretionary "decision or action" of the Attorney General in immigration matters includ[ing] the pace at which immigration decisions are made."); Safadi v. Howard, 466 F.Supp.2d 696, 698-700 (E.D. Va. 2006) (§ 1255(a) vests USCIS with discretion over the entire process of adjustment application adjudication, and § 1252(a)(2)(B)(ii) precludes judicial review of any "action," meaning any act or series of acts, included the pace at which that action proceeds, and therefore no jurisdiction under § 1361); Zheng v. Reno, 166 F.Supp.2d 875, 880-81 (S.D.N.Y.2001) ("Matters within the INS's discretion are not reviewable under the mandamus statute. Thus, courts in this district have repeatedly held that mandamus relief is unavailable for delays in the adjustment process."). Here, Defendants have provided evidence that the application is being processed at a normal pace and relief under the APA and the Mandaus statutes is not available.

2. The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiff has failed to that the delay at issue here is unreasonable. To determine whether the delay is egregious, such that relief under the APA is warranted, several circuits have adopted the six-part test first articulated in Telecomm. Research

and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC").

      a.    A Rule of Reason Governs the Agency Decisions at Issue

The first TRAC factor requires an agency to govern decisions with a rule of reason. TRAC, 750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. See Eldeeb v. Chertoff, 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007). Once the FBI name check in this case has been completed, and there are visa numbers available, USCIS will promptly adjudicate Plaintiff's applications. Heinauer Decl. ¶ 17. Further, USCIS regularly monitors the case to determine whether the name check remains pending. Id. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision. In Plaintiff's case, this means that USCIS must await the results of the FBI name check before reaching a decision on his I-485 application along with the availability of visa numbers. The FBI must be given time to perform an accurate and thorough check. Moreover, the FBI's "first in, first out" processing approach is a method that is "deserving of deference." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

      b.    There Is No Congressionally Mandated Timetable

The second TRAC factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C.

§§ 1105(b)(1), 1255(a).

Defendants acknowledge that Congress has observed that in most instances, applications for immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571. However, the statute expresses a "sense of Congress," and is not a mandate. Id.  The language in § 1571 is merely precatory, and does not impose a deadline on Defendants. See Wright v. City of Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000).  Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case.  The events of September 11, 2001 marked a dramatic shift in issues involving national security. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies
> to be considerably more careful and thorough in their investigations than they were in the past.  In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable").

   c.  The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

1    The third TRAC factor is the delay's impact on human health, welfare, and economic harm to
Plaintiff. This factor's analysis overlaps with the analysis of the fifth TRAC factor, the nature and
extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty Fund, 394 F. Supp.
2d at 118. Plaintiff may be inconvenienced by the delay in adjudication, but this individual interest
cannot outweigh Defendants' interest in fully and accurately completing each name check.
Security background checks for individuals seeking immigration benefits is a key component to our
nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22,
2004) (finding that, "had the immigration system set a higher bar for determining whether
individuals are who or what they claim to be....it could have potentially have excluded, removed, or
come into further contact with several hijackers who did not appear to meet the terms for admitting
short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for
adjustment of status who have pending applications, such as Plaintiff may apply for and obtain
employment authorization for the entire time the application is pending. Heinauer Decl. 5-6.
Additionally, most applicants may also apply for and receive advance parole to enable them to
travel abroad during the pendency of their application. Even when a more substantial impact is felt
by an applicant, this impact, "is unlikely to rise to the level that would significantly change the
Court's assessment of the unreasonableness of the delay in light of the importance of the agency's
competing priorities." Liberty Fund, 394 F. Supp. 2d at 118. As the highest of priorities, "our
national security requires that caution and thoroughness in these matters not be sacrificed for the
sake of expediency." Safadi v. Howard, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Thus, when
balancing the agencies' interests in defending against threats to national security against the
Plaintiff's interest in adjudication, the interests of the nation must prevail.

        d.       The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997),
which applied the TRAC test to a similar complained-of delay in the immigration context, found
the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under

Defendants' Cross-Motion for Summary Judgment
C07-4606 PJH                                            8

the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id.  The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty Fund, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

In Liberty Fund, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications.  394 F. Supp. 2d at 115.  Applying the TRAC factors, the court held that without a statutory timetable governing agency action, the TRAC factor, "that weighs most heavily under the circumstances of the case is the fourth factor - the effect of granting relief on the agency's competing priorities." Id. at 116.  The court reasoned that the agency's "first in, first out processing" was deserving of deference because any grant of relief to Plaintiff would result in no net gain - Plaintiff would move to the front of the queue at the expense of other similarly situated applicants.  After examining the agency's priorities, growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus relief was not warranted.  Id. at 119.

Delays in the processing of FBI name checks arise for a variety of reasons.  First, USCIS is not the only agency that engages in the FBI name check program.  Notably, the FBI and USCIS processes' do not occur in vacuums.  Any requirement that the FBI or USCIS process Plaintiff's name check or application within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits.

The requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons.  Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing.  See In re Barr Lab., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003).  Furthermore, ordering Plaintiff's case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer,

but may not have the resources to file suit.  Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of Plaintiff's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978).  Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353.  The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations.  See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005).  An agency's good faith efforts to address delays militate against a finding of unreasonableness.  See Wright, 587 F.2d at 345.

  e. The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed.  Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiff's FBI name check, and the unavailability of visa numbers.  See Heinauer Decl. ¶ 15. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication.  Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiff has failed to show that USCIS will refuse to adjudicate his application once the FBI completes the requisite name check, and there are available visas.  See Saleh, 367 F. Supp. 2d at 513; see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application).  On the contrary, the FBI and USCIS are

Defendants' Cross-Motion for Summary Judgment
C07-4606 PJH        10

taking active steps towards completing the background checks for adjudication of his application. Specifically, USCIS is making every effort to complete adjudication as soon as the name check is completed, and the availability of visa numbers. Heinaure Decl. ¶ 15.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. See Clayton v. Chertoff, 2007 WL 2904049 (N.D.Cal. Oct.1, 2007) at *3 (a year and a half delay is not unreasonable); Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiff in the present case insists that this Court find an unreasonable delay based solely on the amount of time passed since receipt of the application. A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiff and his wife's adjustment of status applications.

## V. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendants Emilio Gonzalez, Robert Mueller, Gerard Heinauer and Alberto Gonzales and grant the remaining Defendant's motion for summary judgment as a matter of law because Plaintiff is currently not eligible to adjust his status.

Dated: December 26, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

ILA C. DEISS
Assistant United States Attorney
Attorney for Defendants

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she is causing a copy of the following:

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND DECLARATION OF F. GERARD HEINAUER**

<u>Yi Liu v. Michael Chertoff, et al.</u>
Case No. CV 07-4606 PJH

to be served this date upon the party in this action by placing a true copy thereof in a sealed envelope, and served as follows:

__X__  **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

____  **CERTIFIED MAIL** (# ) by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

____  **ELECTRONIC MAIL**

____  **FEDERAL EXPRESS**

____  **FACSIMILE (FAX)**  Telephone No.: __See Below__

to the party(ies) addressed as follows:

**Yiu Liu, Pro Se**
**5381 Diana Common**
**Fremont, CA 94555**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 26, 2007 at San Francisco, California.

_____
BONNY WONG
Legal Assistant